Susan H. MOST

v.

Douglas S. MOST.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1983.

Decided May 1, 1984.

Bernstein, Shur, Sawyer & Nelson, William Willard (orally), George M. Shur, Joyce Wheeler Poulin, Portland, for plaintiff.

Fitzgerald, Donovan & Conley, Constance P. O'Neil (orally), Duane D. Fitzgerald, Bath, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

On April 25, 1983, the Superior Court, Sagadahoc County, entered a judgment granting the plaintiff, Susan Most, a divorce from the defendant, Douglas Most. After the plaintiff filed a motion for amendment, the court, without conducting a hearing, revised the judgment. Asserting the court was required as a matter of law to conduct a hearing prior to modification, and if not, abused its discretion by failing to do so, the defendant appeals from that revised judgment. Additionally, both parties contend the Superior Court abused its discretion in certain provisions of the judgment.[1]

On the same day the plaintiff filed her cross-appeal alleging an abuse of discretion, she moved the Superior Court to grant additional alimony and child support pending the appeal. Finding it lacked jurisdiction to modify a child support and alimony order pending an appeal, the court dismissed the plaintiff's motion. The plaintiff appeals from that decision, and the two appeals were consolidated for review by order of this court.

I.

A. *Facts relating to the appeal from the revised judgment.*

On March 17, 1982, the plaintiff, alleging irreconcilable marital differences, filed a complaint seeking a divorce from her husband. A hearing was held on the complaint on January 4, 1983, and by judgment entered on April 25, 1983, the Superior Court granted the divorce. The court's findings of fact pertinent to this appeal are summarized as follows:

1. Irreconcilable marital differences exist between the parties.

2. The parties have one minor child.

3. The parties own real property in Topsham, Maine, the market value of which is $105,000; the net equity in which is $45,000.

---

1. The plaintiff filed a timely cross-appeal.

4. The defendant's dental practice, purchased after the parties married, has a market value of $60,000.

5. The parties have outstanding marital debts in the sum of $31,400. The debt represents the unpaid balance of $51,400 loaned by the defendant's father for the purchase of the parties' first home (later sold—proceeds used for purchase of real estate in Topsham), and the defendant's dental practice.

6. At the time of the marriage, the plaintiff had nonmarital cash savings totaling $18,000. The defendant had $9,000. These funds were comingled after the parties married, and subsequently invested in the dental practice, home, and other marital assets. The nonmarital cash savings, therefore, are represented by marital property. As a result, the marital property consists of both marital and nonmarital funds.

7. The defendant has nonmarital household furniture and goods worth $9,000 and a 1972 Volkswagen worth $400.

8. The parties together own household goods and effects with a market value of $9,000, an unencumbered 1980 Toyota worth $5,000, and a 1982 Jeep with net equity of $1,500.

9. The plaintiff has uveitis, an eye condition which began prior to the parties' marriage and which, although troublesome during periods of stress, does not prevent the plaintiff from engaging in her chosen profession, teaching.

The order entered in accordance with these findings can be summarized as follows:

1. A divorce was granted on the ground of irreconcilable marital differences.

2. The plaintiff was awarded custody of the parties' minor child; the defendant given reasonable rights to visit with the child, including alternating weekends and holidays and one month during the summer.

3. As child support the defendant was ordered to pay $100 per week, and all reasonable medical, dental, orthodontic and optometric costs, as well as to provide appropriate health insurance.

Provisions 4 and 5 of the court order read as follows:

4. Pursuant to the provisions of 19 M.R.S.A. § 722–A, the Court sets apart to the Plaintiff her non-marital property, consisting of her non-marital cash in the amount of Eighteen Thousand and 00/100 ($18,000.00) Dollars and distributes to the Plaintiff an equitable share of the marital property and accomplishes such setting apart and distribution as follows:

| | |
|---|---|
| Home at Topsham, Maine, | $45,000.00 |
| 1980 Toyota Automobile, | 5,000.00 |
| One-Half (½) of the Marital Household Goods and Contents | 4,500.00 |
| TOTAL; | $54,500.00 |

5. Pursuant to the provisions of 19 M.R.S.A. § 722–A, the Court sets apart to the Defendant his non-marital property consisting of his non-marital cash in the amount of Nine Thousand and 00/100 ($9,000.00) Dollars, and his 1972 Volkswagen bus in the amount of Four Hundred and 00/100 ($400.00) Dollars, his non-marital household goods and contents in the amount of Nine Thousand and 00/100 ($9,000.00) Dollars, and distributes an equitable share of the marital property and accomplishes such setting apart and distribution as follows:

| | |
|---|---|
| 1972 Volkswagen Bus, | $ 400.00 |
| Non-Marital Household Goods and Contents, | 9,000.00 |
| One-Half (½) of the Marital Household Goods and Contents, | 4,500.00 |
| 1982 Jeep, | 1,500.00 |
| Dental Practice, | 60,000.00 |
| TOTAL: | $75,400.00 |

6. As alimony, the defendant was ordered to pay $100 per week for a period of fifty-two weeks or until plaintiff's death or remarriage, whichever might first occur, the amount not to be increased or modified.

7. The defendant was ordered to repay the debt owed the defendant's father—a total of $31,400 (see Finding of Fact No. 5).

8. With the exception of the debt addressed in the previous provision, each par-

ty was ordered to assume all debt outstanding on the property to which each was entitled to in accordance with the order.

9. The defendant was ordered to pay to the plaintiff's attorney, in addition to sums previously ordered paid, $1,500 on account of counsel fees.

■ On April 29, 1983, the plaintiff, without specifying an authorizing rule, filed a "Motion to Amend; Motion for Relief from Judgment."[2] In the motion, the plaintiff requested that the April 25 judgment be amended in several respects, including the striking of the portion of the alimony provision (number 6 of order) specifying the amount may not be increased or modified, the addition of a provision making the defendant responsible for all reasonable medical, dental, optometric, and hospital costs incurred by the plaintiff until her remarriage or the death of either party, and the clarification of the property distribution provisions of the order (number 4 of order) in regard to the method and time of payment and/or return to the plaintiff of her $18,000 cash nonmarital property.[3] The plaintiff suggested that paragraph 4 of the court's order be amended to read:

> Pursuant to the provisions of 19 M.R.S.A. § 722–A, the Court sets apart to Plaintiff all property owned by her prior to the marriage, *including* non-marital cash in the amount of Eighteen Thousand Dollars ($18,000.00), *which sum was invested by Plaintiff in Defendant's business. Said sum shall be repaid by Defendant to Plaintiff within thirty (30) days after the date of this Order. In addition thereto, the Court sets aside and distributes to Plaintiff an equitable share of the marital property as follows:*

| | |
|---|---|
| Home at Topsham, Maine | $45,000.00 |
| 1980 Toyota Automobile | 5,000.00 |
| One-half (½) of the marital household goods and contents | 4,500.00 |
| TOTAL: | $54,500.00 |

(emphasis added).[4]

Without conducting a hearing on the motion, the court, on May 11, 1983, issued a revised judgment. All findings of fact in the revised judgment pertinent to this appeal were left entirely intact.[5] The judgment, however, was modified substantially. As the plaintiff requested, the court ordered that the defendant be responsible for the plaintiff's reasonable medical, optometric and dental expenses,[6] deleted the provision that the amount of alimony could not be increased or decreased, and modified the property distribution provision to require the defendant to pay the plaintiff $18,000 within thirty days of the order.[7] Additionally, on its own initiative, the court altered the defendant's right to visit with the Most's minor child from one month during the summer to four weeks during the

---

2. Although the plaintiff failed to specify an authorizing rule as required by M.R.Civ.P. 7(b) (1983), we treat the motion as if brought under the appropriate rule of civil procedure. 2 Field, McKusick & Wroth, *Maine Civil Practice* § 59.-4a, at 65 (2d ed. 1970); *see Woodham v. American Cystoscope Co.*, 335 F.2d 551, 554–55 (5th Cir.1964) (motion to reconsider dismissal treated as 59(e) motion); *Dongo v. Banks*, 399 A.2d 574, 575 (Me.1979) (motion to reconsider denial of previous motion treated as 59(e) motion). Therefore, the portions of plaintiff's motion requesting substantive changes in the April 25, 1983 judgment will be treated as being brought pursuant to Rule 59(e).

3. Additionally, the plaintiff requested the court to strike as irrelevant its finding that her marriage to Douglas Most was her third, and to add a provision stating that each party shall respect the privacy of and not harass the other.

4. On May 3, 1983, the plaintiff filed a second "Motion to Amend; Motion for Relief from Judgment." This motion asked that the court amend the findings and order issued April 25, 1983, in order to "properly clarify the rights and obligations of the parties and the intention of the court . . . ." The motion specified that it was brought pursuant to M.R.Civ.P. 59 and 60.

5. The court did strike its previous reference to the plaintiff's third marriage.

6. Additionally, at the plaintiff's request, the court ordered each party to respect the other's privacy, and not harass the other.

7. The court adopted the plaintiff's suggested provision as proposed, without any changes.

course of the year. Moreover, whereas the court had originally limited the defendant's alimony obligation to a maximum of 52 weeks, the revised judgment provided the defendant was to pay alimony until the plaintiff remarried or either party died.[8] The court provided neither notice of nor an opportunity to be heard on the changes made on its own initiative.

B. Facts relating to the appeal from the dismissal of plaintiff's motion seeking additional child support and alimony.

On June 17, 1983 the plaintiff filed a "motion for enforcement of judgment, including arrearages, and contempt of court." In the motion, the plaintiff, after stating the defendant had failed to pay her the sum of $18,000 as ordered in the revised judgment, and that she lacked sufficient means to maintain the real estate without immediate payment, requested that the court reinstate its prejudgment support order. In a motion filed July 15, 1984 to clarify the motion filed June 17, 1983, the plaintiff asserted the court had power to grant its request under statutes allowing separate support pending a divorce action, *see* 19 M.R.S.A. § 693 (1981), and modification of alimony and child support, *see* 19 M.R.S.A. §§ 721, 752 (1981 and Supp. 1983–1984). The court dismissed the portions of the plaintiff's June 17, 1983 motion requesting a change in support, declaring it lacked jurisdiction to consider a motion to change or modify a divorce judgment pending an appeal to this court.[9]

## II.

The propriety of the modification of the initial decree.

The revised decree issued on May 11, 1983 represented a significant departure from the original divorce order. The Superior Court not only made those alterations the plaintiff requested, but also made changes entirely on its own accord. The defendant contends Maine Rule of Civil Procedure 80(j) governs the modification of divorce judgments, and requires as a prerequisite to modification personal service upon the non-moving party and a hearing. Conversely, the plaintiff argues Maine Rule of Civil Procedure 59(e) authorized the court to alter its initial decree, and leaves the decision whether to conduct a hearing to the discretion of the divorce court. We now turn to an examination of the history and purpose of these two rules to determine whether the Superior Court was empowered under either to make the requested and unrequested substantive changes in its initial judgment, and, if so, whether notice and an opportunity to be heard was required prior to such action.

█ Maine Rule of Civil Procedure 59(e) provides, "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." M.R. Civ.P. 59(e) (1983). Although on its face, this rule does not specifically authorize a court to modify a judgment duly entered, its history indicates it permits substantive alteration when necessary to achieve substantial justice.

Maine Rule 59(e) was derived from and with slight modifications is identical to Federal Rule of Civil Procedure 59(e), which, according to the Advisory Committee on Amendments to the federal rules, was added to Federal Rule 59 (governing post-judgment new trial motions) to make clear a trial court has the power to alter its judgment as asserted in *Boaz v. Mutual Life Insurance Co. v. New York*, 146 F.2d 321 (8th Cir.1944). *See* 28 U.S.C. appendix, at 591 notes of Advisory Committee on 1946 Amendment to Rules (1976). In *Boaz*, an action brought by a beneficary upon a double indemnity life insurance policy, the district court dismissed the action without prejudice for insufficiency of the evidence.

---

**8.** The Court did not explain the reasons for any other changes, stating only that it had reviewed its notes from the divorce hearing.

**9.** The court stated it would hear the plaintiff's motion only as far as it related to enforcement of the custody and support provisions of the revised judgment.

*Boaz,* 146 F.2d at 321. Two days after entry of the judgment, the court, upon the defendant's motion, set aside the dismissal without prejudice and entered an order of dismissal with prejudice. *Id.* at 321–22. The plaintiff appealed, contending, *inter alia,* the trial court acted erroneously and without jurisdiction in setting its initial order aside. The Eighth Circuit Court of Appeals disagreed, stating:

> It is evident that the parties and the court understood that the court was then called on to decide whether the plaintiff should have leave to dismiss without prejudice or whether the defendant should have a final dismissal. That was an issue which the court decided at the trial in favor of plaintiff. On the reconsideration required by defendant's motion, the court was convinced that such decision was erroneous.... [T]here was neither error nor abuse of discretion in terminating the lawsuit so far as the district court was concerned, by final dismissal.

*Id.* at 323.

In dissent, Justice Johnsen argued the district court acted improperly. Justice Johnsen found no authority for the right of the district court to "recapture" its judgment, be it right or wrong. Rather, the dissenting justice argued, the court could only approve the judgment or grant a new trial. *Id.* at 324.

■ Rule 59(e) was enacted to make clear the majority was correct. Under Rule 59(e), the trial court is free within a very limited time period to alter or amend its judgment when convinced it was errone-ous, and substitute the proper judgment in its place.[10] *See Boothbay Harbor Condominium I v. Whitten,* 387 A.2d 1117, 1120 (Me.1978); 2 Field, McKusick, and Wroth, *Maine Civil Practice* § 59.4a, at 370 (2d ed. Supp.1981); *see also Cates v. Farrington,* 423 A.2d 539, 541 (Me.1980) (Rule 59(e) motion need not be granted unless substantial justice has not been done). Although most of the cases employing Rule 59(e) involve instances in which the initial judgment was erroneous because of a mistake of fact or as a matter of law, we perceive no difference in a court's power under Rule 59(e) when the initial judgment is revised solely to reach what the revising court deems a more just result.[11] The power to alter or amend a judgment upon a Rule 59(e) motion, however, is not unlimited. A party moving the court for Rule 59(e) relief must do so within ten days of entry of judgment.[12] M.R.Civ.P. 59(e); 2 Field, McKusick and Wroth, *supra,* § 59.4a, at 65 (1970). Moreover, a court may not alter or amend a judgment entered upon a jury verdict in a manner that would constitute a reexamination of the facts found by the jury in contravention of the seventh amendment. Moore, *supra,* § 59.12(1), at 59–288, and cases cited therein.

■ A question remaining, however, is whether Rule 59(e) authorizes a court to make changes in its judgment that were not specifically contemplated by the motion. Stated otherwise, we must consider whether a Rule 59(e) motion opens the judgment for correction of any error the court deems it made. We hold it does.

---

**10.** For a collection of cases in which Federal Rule 59(e) has been invoked to alter substantively a judgment see 6A *Moore's Federal Practice* § 59.12(1) at 59–281 to 59–288 (1983).

**11.** We cannot read the statement in *Cates v. Farrington,* 432 A.2d at 541, that "such motions must be based on a manifest error of law or mistake of fact" to foreclose the trial court from amending its judgment to reflect that which it may determine upon further consideration to be a more correct conclusion of law or finding of fact.

**12.** Prior to enactment of Federal Rule 59(e), a court was thought to have the power to alter or amend a judgment until its term ended. *See* Moore, *supra,* § 59.01(1) at 59–5. The ten-day time limit is important, since a Rule 59(e) motion suspends the finality of the initial judgment and defers the running of the appeal period. *See* Field, McKusick, and Wroth, *supra,* § 59.4a, at 65 (1970).

In *Continental Casualty Co. v. American Fidelity and Casualty Co.*, 186 F.Supp. 173 (S.D.Ill.1959), *aff'd* 275 F.2d 381 (7th Cir.1960), the United States District Court for the Southern District of Illinois, presented with the same question, noted that Federal Rule 59(d), the equivalent of Maine Rule of Civil Procedure 59(d), expressly authorizes the trial court to grant a new trial on its own initiative for any reason it might have granted one upon motion of a party, as long as it does so within ten days after the judgment has been entered. M.R.Civ.P. 59(d) (1983). If Rule 59 is to provide a comprehensive post-trial and post-judgment motion procedure, the *Continental Casualty* Court observed, the different provisions of the rule must be read together. The court then stated:

Paragraph (e) of the Rule which merely fixes the time within which a motion to alter or amend shall be filed, must be construed as contemplating a procedure coextensive in its scope and its grant of power to the trial court with that upon motions for a new trial. Any other construction would render paragraph (e) meaningless. I think the position untenable to suggest that the court might on its own initiative within ten days after entry of judgment decide that the judgment is erroneous, set the same aside and grant a new trial, but that the court has not the power, upon a motion under Rule 59(e) to alter a judgment to take like notice of errors which fatally affect its judgment.

The court is not restricted to specific contentions of error raised in defendant's motion. Such a result would create an absurdity. It would compel a court under certain circumstances, faced with the conclusion that its prior decision was erroneous, to compound the error by abiding by that prior decision merely because the error pervading the judgment is not among those which are raised by a motion to amend. The effect of the motion before us is to open the February 7 judgment and invite the court's reconsideration of the propriety thereof.

*Continental Casualty Co.*, 186 F.Supp. at 179–80; *see also Mumma v. Reading Co.*, 247 F.Supp. 252 (D.Pa.1965) (reaching same result); Moore, *supra*, § 59.12(4), at 59–293 and n. 3 (concluding court has power on own initiative to alter or amend judgment under Rule 59(e)). We find this rationale compelling, and hold that under Maine Rule of Civil Procedure 59(e), a court is not restricted to making only those changes requested by the moving party.

Our holding that Rule 59(e) authorizes a trial court to amend its initial order substantively, both as requested and on its own initiative, does not necessarily foreclose the defendant's argument that Rule 80(j) was applicable. Maine Rule of Civil Procedure 80(j) provides that any proceeding for modification of a divorce judgment shall be on motion, "a copy of which together with notice of hearing thereof shall be served in accordance with Rule 4 ...." Rule 80(j) alters typical motion procedure, in that it requires, prior to modification, personal service upon the party against whom modification is sought, as well as an opportunity to be heard. To determine whether this rule is applicable to an alteration of a divorce judgment under Maine Rule of Civil Procedure 59(e), we turn to an examination of the history of Rule 80(j).

Added to the Maine Rules of Civil Procedure in 1960, Rule 80(j) was deemed necessary to assure that the party against whom modification of a divorce judgment was sought had both notice and an opportunity to be heard prior to modification. *See* M.R.Civ.P. 80(j) explanation of amendments; 2 Field, McKusick and Wroth, *supra*, at 270. Because a divorce judgment is continually subject to modification with respect to alimony and support and custody of minor children, and therefore, motions to modify might be entertained several years after the initial decree is issued, Rule 80(j) recognized that service upon the original attorney of record might not be adequate to notify properly the affected parties. By requiring personal service upon the non-

moving party, Rule 80(j) ensures adequate notice. Further, by mandating a hearing, Rule 80(j) affords a degree of protection from the serious consequences which might ensue from modification several years after the initial decree is entered. *See id.*, § 80.4, at 279.

Viewed in light of its history, we hold that when a divorce judgment is amended or altered within the specific and narrow time constraints of Rule 59(e), Rule 80(j) and its notice and hearing provisions have no applicability. Simply, the dangers sought to be avoided by Rule 80(j) are not presented when a motion to alter a divorce judgment is made under Rule 59(e). We deem service of a Rule 59(e) motion upon opposing counsel an adequate means of notice. *See* M.R.Civ.P. 5(b). Moreover, we do not regard the Rule 80(j) hearing as essential to protect the rights of the party against whom a Rule 59(e) motion is filed. Typically, a Rule 80(j) modification motion is based on the changed circumstances of the parties. To modify a divorce order on the basis of one party's change in circumstances without considering the other's would be patently unfair. Rule 80(j) guards against this by mandating a hearing. Conversely, a Rule 59(e) motion is based not on a change of circumstances, but on the need to render substantial justice based on facts just litigated. A court granting a Rule 59(e) motion is not free to litigate anew. Rather, the court may only re-examine those facts already presented to determine whether an error of law or fact has taken place and whether substantial justice has been rendered.

Having determined the alteration of the initial divorce decree was authorized and controlled solely by Maine Rule of Civil Procedure 59(e), we now consider whether that rule, silent on the matter, requires a hearing prior to such alteration. To aid in our analysis of this issue, we again must view Rule 59 in its entirety. By doing so, we ensure a comprehensive and consistent procedure for post-judgment motions under Rule 59.

Pursuant to Maine Rule of Civil Procedure 59(a), "The justice before whom an action has been tried may on motion grant a new trial to all or any of the parties and on all or part of the issues for any of the reasons for which new trials have heretofore been granted ...." *See* 2 Field, McKusick, and Wroth, *supra*, § 59.2, at 59–61 (listing reasons new trials historically granted). A motion for a new trial must be served not later than ten days after the judgment has been duly entered. M.R. Civ.P. 59(b). When a Rule 59(a) motion is properly served, the court is not required to conduct a hearing prior to granting a new trial if doing so for one or more of the reasons asserted in the motion. Rather, "it is within the discretion of the trial justice to dispense with a hearing and to decide the case on the record and the affidavits submitted by the parties." *Spickler v. Dube*, 463 A.2d 739, 741 (Me.1983). The decision whether to hold a hearing is reviewable on appeal only for an abuse of discretion. *Id.*

As long as a new trial motion has been timely served under Rule 59(b), the court may grant a new trial not only on a ground specified in the motion, but also for any reason it deems appropriate. M.R. Civ.P. 59(d). If granting a new trial for a reason of its own making, the court is not restricted to ten days from entry of judgment within which to act. The finality of judgment has already been destroyed by the timely motion. In the interests of fairness and finality of judgment, however, a court granting a new trial for a reason not specified in the motion must first afford the parties notice and an opportunity to be heard. M.R.Civ.P. 59(d); *see* M.R.Civ.P. 59 explanation of amendments, 2 Field, McKusick and Wroth, *supra*, at 55.

Although most new trials are granted on motion of a party, the filing of a motion within ten days after entry of judgment is not a prerequisite to granting a new trial under Rule 59. Pursuant to Rule 59(d), the trial court may on its own

initiative order a new trial for any reason it could have done so on motion of a party. The court is free to grant a new trial on its own initiative without affording the parties notice and an opportunity to be heard. The power of the court to order a new trial on its own initiative is not, however, unlimited. The court must do so within ten days after entry of judgment. 2 Field, McKusick and Wroth, *supra*, § 59.3, at 63. The ten-day time limit is equal to the time limit commonly imposed on motions which, like the Rule 59 motion, suspend the finality of judgment. *See, e.g.,* M.R.Civ.P. 52(b), 59(b) and 59(e). *See generally* Moore, *supra*, § 59.11, at 52–268 to 52–269.

 We believe these same procedures should apply to Rule 59(e), a corollary of the new trial provisions of Rule 59. Accordingly, we hold that a court may, upon motion of a party served within ten days after entry of judgment, alter or amend its judgment. If the court modifies the judgment in the manner requested by the moving party, it may or may not elect to conduct a hearing. That decision will be reviewed only for an abuse of discretion. *Cf. Spickler v. Dube,* 463 A.2d at 741. Moreover, when a party serves a timely motion under Rule 59(e), the court may correct errors in the judgment which it deems appropriate, even though the changes were not requested by a party. Although not limited to a ten-day period within which to make unrequested alterations, a court making such changes more than ten days after entry of the original judgment must first notify the parties of its intent to do so and provide an opportunity for a hearing. Finally, the court may, without notification or hearing, alter or amend a judgment on its own initiative. The court's power in this regard, however, is limited to the ten-day time period assigned to 59(e) motions. *See* 6A Moore, *supra*, § 59.12(4), at 59–293 and n. 3 (outlining arguments for allowing court to alter or amend on own initiative).

 In the instant case, the revised judgment, issued sixteen days after the original, included both requested and unrequested changes. In addressing the propriety of making the requested changes without a hearing, we consider only whether the court abused its discretion. In *Spickler v. Dube,* when considering the same question in regard to a Rule 59 motion for a new trial, we deemed significant the fact that the motion justice had presided at trial, and therefore had heard the evidence, observed the exhibits, and listened to the arguments of the parties. *Spickler v. Dube,* 463 A.2d at 741. Additionally, we noted the appellant did not contend that any information not already before the court would have been presented at a hearing. *Id.* Finding these same factors to be present here, we conclude, as we did in *Spickler,* that because all information necessary for the court's consideration was already before it, no abuse of discretion was committed.

 Our holding that notice and a hearing must be given before the court can, after ten days from entry of original judgment, alter or amend its judgment in a manner not requested by a party, mandates we vacate the provisions of the revised judgment pertaining to Douglas Most's indefinite alimony obligation and right to visit with his child for four weeks during the year.[13] The Superior Court must grant the parties an opportunity to be heard on both of these matters. We remand the matter for such purpose.

**13.** We recognize the inherent power of the Superior Court to construe its own judgment, *see Randlett v. Randlett,* 401 A.2d 1008, 1010 (Me. 1979); *Boothbay Harbor Condominium I v. Whitten,* 387 A.2d 1117, 1120 (Me.1978), and that the plaintiff filed a motion on May 3, 1983, asking the court to clarify its judgment. A hearing would not be necessary prior to the court taking such action. It cannot reasonably be argued, however, that the alteration of the alimony and visitation provisions constituted clarification of the initial decree. The provisions in the initial judgment relating to alimony and Douglas Most's right to visit his minor child were clear and unambiguous and required no clarification.

### III.

Did the Superior Court abuse its discretion in certain portions of the revised divorce judgment?

■ When a judgment is altered or amended pursuant to Maine Rule of Civil Procedure 59(e), it becomes the final judgment from which the appeal is taken. *Grant v. Grant,* 424 A.2d 139, 141 (Me. 1981). We now turn to those provisions of the revised decree to which the parties assign error.

■ The defendant contends the trial justice abused his discretion when fashioning the property distribution provision in the revised order. We will not disturb the provisions in a divorce order relating to property distribution unless the divorce court has misapplied the law or abused its discretion. *See Smith v. Smith,* 472 A.2d 943 at 945 (Me.1984); *Quimby v. Quimby,* 450 A.2d 486, 487 (Me.1982); *Crooker v. Crooker,* 432 A.2d 1293, 1297 (Me.1981).

■ Having carefully reviewed the record, we are convinced that no abuse of discretion occurred. Although the distribution of marital property appears to have favored the plaintiff, such is not forbidden by 19 M.R.S.A. § 722–A (1981). In fact, given each spouse's personal and financial contribution to acquisition of the marital property and the economic circumstances of each spouse at the time the division was to become effective, the distribution was entirely proper. The plaintiff's only assets were those distributed to her by the court. Moreover, the plaintiff was not working full-time during the latter stages of the marriage, and when compared to the defendant, is of limited earning capacity. *See* 19 M.R.S.A. § 722–A(1)(C) (court should consider economic circumstances of spouses). In these circumstances, we cannot say the court abused its discretion in its division of the Most's marital property.[14]

■ On her cross-appeal,[15] the plaintiff contends the court abused its discretion by ordering the defendant to pay only an additional $1,500 on account of the plaintiff's attorney's fees. The plaintiff asserts that in a case involving a complex valuation of the defendant's dental practice and an evaluation of the plaintiff's eye disease, the $1,500 award was clearly insufficient.

14. We similarly find no abuse of discretion in the manner the court set aside each spouse's non-marital property.

15. The defendant argues that the plaintiff's cross-appeal should be barred because of her own motion to amend. The defendant notes that in the plaintiff's motion to amend she asks for very spcific amendments to the initial order, and the court adopted each of the plaintiff's suggestions. Therefore, the defendant contends, the plaintiff should not be allowed to complain on appeal that the amended judgment should have provided her with even more. This argument is without merit. The only supporting authority the defendant has offered for his argument is *Grant v. Grant,* 424 A.2d 139 (Me. 1981). In *Grant,* the justice presiding at the divorce hearing erroneously found that the defendant-father was liable for the full support of the minor children without contribution from the plaintiff-mother. The defendant filed a timely motion to alter or amend pursuant to Rule 59(e), seeking to delete the provision relating to his exclusive obligation for support. The motion was granted and the judgment was amended accordingly. The defendant then appealed the amended judgment. *Id.* Noting that the amended judgment required the mother to contribute to the support of the children, and thus the amended judgment "embodied exactly the contribution by his wife to child support that defendant sought in his motion to amend....," We observed, "defendant will not now be heard to complain, for the first time on appeal, that the amended judgment should have required her to make a larger contribution." *Id.* at 141. *Grant* is factually distinguishable from the case at bar. Although the amended judgment in the instant case reflected exactly what the plaintiff requested in her motion to amend, the plaintiff, unlike the plaintiff in *Grant,* challenges provisions in the revised order which are not of her making. Those provisions which the plaintiff challenges were not addressed in the plaintiff's motion to amend. If we were to decide the plaintiff should be barred from taking an appeal in this instance, we would, in effect, be enunciating a rule which would effectively bar a party from taking an appeal to this court after being successful on a Rule 59(e) motion. This is neither sound policy nor the intent of Rule 59(e).

 Pursuant to 19 M.R.S.A. § 722(3) (1981), the court may order the spouse charged with payment of support and/or alimony to pay the other's attorney's fees reasonably incurred in the prosecution of a divorce complaint. *See Strater v. Strater,* 159 Me. 508, 196 A.2d 94 (1963). In awarding attorney's fees, the court is to consider the parties' relative capacity to absorb the costs of litigation. *Lagarde v. Lagarde,* 437 A.2d 872, 876 (Me.1981); *Smith v. Smith,* 419 A.2d 1035, 1040 (Me. 1980). We will not disturb an award of attorney's fees unless the Superior Court has abused its discretion in setting the amount. *See Smith v. Smith,* 419 A.2d at 1040. In the instant case, we cannot from the record before us find an abuse of discretion in the award. The plaintiff failed to present evidence of any kind demonstrating the amount of attorney's fees she incurred. We cannot say that the Superior Court abused its discretion in ordering Douglas Most to pay the plaintiff's attorney an additional $1,500 on the basis of a bald assertion by the plaintiff that substantial fees were incurred. Moreover, considering the judgment as a whole, as we must, *see Hebert v. Hebert,* 475 A.2d 422 at 425 (Me., 1984), we find the Superior Court could reasonably have determined that Susan Most was capable of absorbing the costs of litigation in excess of $1,500.[16]

## IV.

The authority of the Superior Court to modify child support and alimony during pendency of an appeal.

In motions filed on June 17, 1983 and July 15, 1983, the plaintiff sought modification of the child support and alimony provisions of the divorce judgment. The plaintiff contends the Superior Court erred by dismissing these motions for want of jurisdiction. We deny this portion of the appeal.

 In pertinent part, Maine Rule of Civil Procedure 73(f) provides, "The Superior Court shall take no further action until after certification of disposition of the appeal in the Law Court, except as provided in Rules 27(b), 60(c), 62(d), and 74(e) ...."[17] Rules 27(b), 60(a), 62(d), and 74(e) do not pertain to the power of the Superior Court to alter the child support and alimony provisions of a divorce judgment, and therefore are not helpful. The plaintiff correctly notes we have recognized previously that during the appeal period the Superior Court may act on a motion for *enforcement* of the child support and custody and alimony provisions of a divorce judgment. *See Sylvester v. Sylvester,* 429 A.2d 223, 227 (Me.1981); *Tibbetts v. Tibbetts,* 406 A.2d 78, 81 (Me.1981). It does not logically follow, however, that the Superior Court may also *modify* these provisions during this same period. Generally, all portions of a judgment are stayed during pendency of an appeal. M.R.Civ.P. 62(a), (e) (1983). Maine Rule of Civil Procedure 62(a) specifically exempts from application of this rule the provisions of a divorce judgment relating to the care, custody, and support of minor children and the alimony of the wife.[18] The power of the

16. Additionally, the plaintiff argues the Superior Court erred by denying her motion to issue an order compelling the defendant to produce certain records relating to the value of his dental practice. At the divorce hearing, the defendant asserted he had produced all pertinent records of which he was capable. According to the trial court great latitude to judge the credibility of witnesses, *see Qualey v. Fulton,* 422 A.2d 773, 775 (Me.1980), we hold the trial court did not err by denying the motion.

17. Rule 73(f) makes clear that except in a limited number of circumstances, jurisdiction is vested in and all further actions are taken by this

court as soon as an appeal is docketed. *See Bancroft & Martin v. Local No. 340, Truck Drivers, Warehousemen & Helpers Union,* 412 A.2d 1216 (Me.1980); Field, McKusick, and Wroth, *supra,* § 73.11(a), at 448 (Supp.1981).

18. Maine Rule of Civil Procedure 62(a) provides, in pertinent part:
 Unless otherwise ordered by the court ... in an action for divorce, an order relating to the care, custody and support of minor children or to the separate support or personal liberty of the wife shall not be stayed during the period after its entry until an appeal is taken or during the pendency of an appeal.

divorce court to enforce a child support and custody and alimony order is a natural and necessary corollary of Rule 62(a). Without a continuing enforcement power allowing the Superior Court to enforce those operative provisions of its judgment, the purpose of 62(a) would be defeated. This narrow exception to the general rule concerning stay of judgment cannot be construed to allow the Superior Court to modify as well as enforce these provisions of a divorce judgment.[19]

 When a divorce judgment becomes oppressive during the pendency of an appeal to this court, the parties are not necessarily without relief. Pursuant to Maine Rule of Civil Procedure 75B and 76A(c) (1983), the oppressed party may move this court for suspension of Rule 73(f). Because the Superior Court was prohibited from acting on the plaintiff's motion by Rule 73(f), this portion of the appeal must be denied.

The entry is:

Judgment dismissing motion for modification affirmed. Judgment of divorce affirmed except as to provisions relating to alimony and the defendant's right to visit with his child, which are remanded for further proceedings consistent with part II of the opinion herein.

All concurring.

19. The plaintiff's June 15 motion also asked the divorce court to reinstate the temporary child support and alimony order issued prior to its judgment. The Superior Court was clearly without power to grant this request. *Tibbetts v. Tibbetts*, 406 A.2d at 82.

The plaintiff argues that the Superior Court has power to modify support provisions in its divorce judgment under the authority of 19 M.R.S.A. §§ 721, 752 (1981 and Supp.1983–1984). Although these provisions make clear the Superior Court retains jurisdiction to alter child support, custody, and alimony provisions when a change of circumstances of a party so require, Maine Rule of Civil Procedure 73(f) limits the divorce court's power to act under these statutes until final disposition of an appeal in this court.

Finally, the plaintiff argues that 19 M.R.S.A. § 693 (1981) authorizes the Superior Court to modify during the pendency of an appeal the provisions of a divorce judgment relating to support and alimony. *See also* M.R.Civ.P. 80(c) (1983). 19 M.R.S.A. § 693 provides that the divorce court may order temporary support and alimony *"[p]ending a divorce* action." We do not construe the phrase "pending a divorce action" to include the appeal period. Rather, this statute, as well as Maine Rule of Civil Procedure 80(c), allows temporary support and alimony only prior to entry of the divorce judgment. The divorce judgment is considered final except for purposes of appeal.