STATE OF MAINE         SUPERIOR COURT
CUMBERLAND, ss.        Civil Action
                 Docket No. AP-23-14

DALE J. HOLMAN,    )
          )
    Plaintiff,   )
          )
  v.        )     **ORDER**
          )
CITY OF PORTLAND, and STJ, )
INC.,         )
          )
    Defendants.  )
          )

REC'D CUMB CLERKS OFC
DEC 8 '23 PM3:44

Before the Court are the City of Portland's ("the City" or "Portland")
motion to dismiss Count I of the complaint, which STJ, Inc. ("STJ") has joined,
STJ's motion for a *Spickler*[1] order, and Holman's M.R. Civ. P. 80B appeal. The
Court held oral argument on these matters on November 7, 2023. For the
reasons discussed below, the City's motion to dismiss is GRANTED, STJ's
motion for a *Spickler* order is GRANTED, and Holman's Rule 80B appeal is
DISMISSED.

## I. Factual and Procedural Background

This matter comes before the Court as Holman's latest attempt to
obstruct development at 73 Powsland Street in Portland through litigation.
Holman owns property located at 10 Willow Lane in Portland, which abuts the
Powsland Street property owned by STJ. Over the long history of Holman's

---

[1] *See Spickler v. Key Bank,* 618 A.2d 204 (Me. 1992); *Spickler v. Dube,* 644 A.2d 465 (Me. 1994).

opposition campaign to any development at 73 Powsland Street, his principal arguments have remained the same: the property was "illegally" zoned, and any development of the property will cause stormwater drainage issues that will negatively impact his property.

Holman filed his first complaint related to this dispute in 2007, *Holman v. STJ, Inc.*, No. RE-07-188 (Me. Super. Ct., Cum. Cnty., Apr. 16, 2008). *See Holman v. STJ, Inc.*, No. CV-18-97, slip op. at 1-2 (Me. Super. Ct., Cum. Cnty., Oct. 30, 2019) (describing the history of Holman's litigation). This first case was dismissed with prejudice following a stipulation of dismissal. *Id.*

Approximately ten years later, Holman served STJ and a related entity, Gorham Sand & Gravel, Inc., with a summons and complaint involving "similar allegations" to the complaint filed in 2007. *Id.* The defendants in that case filed their answer and counterclaim and at that time discovered that Holman had "deliberately withheld filing the complaint with the court," which led to the complaint's dismissal. *Id.* at 2. Holman was ordered to pay the defendants' attorney's fees in this action because the court found that the action was "vexatiously commenced." *Id.* Holman appealed this order to the Law Court, but his appeal was dismissed because he failed to file a brief. *Id.* at 2 & n.4.

After his unsuccessful appeal, Holman moved to set aside the judgment against him, but the court found this motion to be lengthy, repetitive, and meritless. *Id.* at 3. Holman then moved to amend the order denying his motion to set aside the judgment, arguing that he should not be ordered to pay any attorney's fees. *Holman v. STJ, Inc.*, No. CV-2018-97, slip op. at 1 (Me. Super.

2

Ct., Cum. Cnty., June 30, 2020). The Superior Court (Cumberland County, *Kennedy, J.*) evaluated defendants' counsel's fee affidavit and ordered Holman to pay fees in the amount of $4,410.00. *Id.* Holman then moved for additional findings of fact and conclusions of law. *Holman v. STJ, Inc.*, No. CV-2018-97, slip op. at 1 (Me. Super. Ct., Cum. Cnty., Aug. 17, 2020).

Defendants to the second matter, STJ and Gorham Sand & Gravel, moved for a *Spickler* order, which was denied on jurisdictional grounds. *Holman v. STJ, Inc.*, No. CV-18-97, slip op. at 1 (Me. Super. Ct., Cum. Cnty., Oct. 30, 2019). In the court's order denying the *Spickler* motion, the court warned Holman "that any future similar [litigious and vexatious] behavior on his part or attempts to re-litigate old matters could result in the imposition of a *Spickler* injunction against him." *Id.* at 5. To this date, Holman has not paid the attorney's fees he was ordered to pay in the second matter. (Mot. Order to Restrain Pl. from Filing Further Lawsuits 2 n.1.)

Approximately two months after Holman's second complaint was dismissed, Holman filed a third complaint against STJ, Gorham Sand & Gravel, and the property itself, 73 Powsland Street, based on similar allegations to the prior two complaints. *Holman v. STJ, Inc.*, No. CV-18-97, slip op. at 2 (Me. Super. Ct., Cum. Cnty., Oct. 30, 2019). The third complaint was dismissed on the merits in part for failure to oppose defendants' motion to dismiss and in part because the complaint was an attempt to re-litigate issues from the 2007 litigation. *Holman v. STJ, Inc.*, No. CV-2018-302, slip op. at 1-2 (Me. Super. Ct., Cum. Cnty., Nov. 13, 2018). After the complaint was dismissed, defendants in

3

the third matter moved for a *Spickler* order, while Holman cross-moved seeking to have the defendants declared in contempt of court. *Holman v. STJ, Inc.*, No. CV-2018-302, slip op. at 1 (Me. Super. Ct., Cum. Cnty., Feb. 20, 2019). The court determined that Holman's cross-motion for contempt was frivolous. *Id.* Although this third action was commenced later in time than the second complaint, this *Spickler* motion was the first time the Superior Court had been asked to consider such a measure. The court ultimately determined that it did not have jurisdiction to enter a *Spickler* order as the underlying complaint had already been dismissed, but on the merits characterized it as a "close question" as to whether Holman's conduct rose to the level of vexatiousness required to enter a *Spickler* order against him. *Id.* at 1, 3. The court's order stated that "Holman is on notice that any future similar behavior on his part could result in the imposition of a *Spickler* injunction against him." *Id.* at 3.

In addition to Holman's now four actions naming STJ as a defendant, the court is aware of and takes judicial notice of five additional lawsuits filed by Holman against various parties related to his 10 Willow Lane property. In 2018, he initiated two separate suits against nine parties including his neighbors and the Willow Home Owners Association alleging water diversion onto his property. *Holman v. Johnson*, No. CV-2018-68 (Me. Super. Ct., Cum. Cnty.); *Holman v. Johnson*, No. CV-2018-143 (Me. Super. Ct., Cum. Cnty.). Those cases were consolidated and resulted in a stipulation of dismissal, which included an agreed-to *Spickler* order against Holman. *Holman v. Johnson*, No. CV-2018-143 (Me. Super. Ct., Cum. Cnty., Stipulated Order entered Nov. 20,

4

2018). Holman also filed a third lawsuit against the Willow Home Owners Association in 2018 based on the same factual allegations he made in CV-2018-143 (Me. Super. Ct., Cum. Cnty.). This action was dismissed as duplicative. *Holman v. Willow Home Owners Ass'n*, No. RE-2018-179, slip op. at 3 (Me. Super. Ct., Cum. Cnty., Order entered Sept. 11, 2018).

In 2019, Holman filed a complaint against R.E. Coleman, Inc., alleging public and private nuisance related to work R.E. Coleman completed at 73 Powsland Street and the surrounding area. *Holman v. R.E. Coleman, Inc.*, No. CV-2019-127 (Me. Super. Ct., Cum. Cnty., complaint docketed Mar. 28, 2019). That case concluded with a stipulation of dismissal, dismissing the case with prejudice. *Holman v. R.E. Coleman, Inc.*, No. CV-2019-127 (Me. Super. Ct., Cum. Cnty., order entered July 29, 2019).

Most recently, Holman sued the City of Portland in 2021 alleging that, when the City changed the zoning for the area including 73 Powsland Street in 1997, it did so illegally because the City failed to "engag[e] the public" on the zone change. *Holman v. City of Portland Maine*, No. CV-2021-381 (Me. Super. Ct., Cum. Cnty., complaint docketed Oct. 22, 2021). This action was dismissed as time-barred by the statute of limitations. *Holman v. City of Portland*, No. CV-2021-381 (Me. Super. Ct., Cum. Cnty., Order dated Mar. 8, 2022). Holman appealed this decision to the Law Court, and the Law Court agreed that the statute of limitations to challenge the 1997 zoning change had run. *Holman v. City of Portland*, Mem-22-99 (Nov. 21, 2022).

5

Beyond the courts, Holman has a history of turning to administrative and disciplinary bodies to air his grievances related to 73 Powsland Street. Holman has filed three bar complaints against STJ's counsel. Holman made the first bar complaint just two hours after a damages hearing for attorney's fees in the second lawsuit he filed against STJ. Holman filed the second bar complaint three days after STJ filed a motion for a *Spickler* order in the third lawsuit Holman filed against STJ. Holman filed the third bar complaint on June 14, 2019. The Court is unaware of any of these bar complaints resulting in discipline. Holman also filed a formal complaint against the license of an engineer for STJ that performed work on the Powsland Street project. This complaint was dismissed.

Through various email communications with STJ's counsel, Holman has expressed his intention to continue litigating the matter until he gets the outcome that he wants, which is to block development at 73 Powsland Street. In a February 14, 2018 email, Holman stated, "[p]lease allow your client to know that I will not be going away, and that I will fight this forever! I have not yet begun to fight, and I will prevail legally with all my pursuits and efforts." (Mot. Order to Restrain Pl. from Filing Further Lawsuits, Ex. C.) In a November 2, 2018 email, Holman stated:

> 1.) I am considering to hire [sic] the legal consultant services of F. Lee Bailey to research possible criminal charges for the ongoing antics of the landowner / contractors.
> 2.) I am considering filing emotional distress action [sic] against your client, and you/your firm.

(*Id.* Ex. D.) On December 14, 2018, Holman sent an email stating: "I am considering a restraining order against you and your client." In a June 29, 2022 email, Holman expressed his opinion that STJ's counsel "should be disbarred" and that Holman wants to file a case against counsel for defamation and "unethical antics."

Holman has also taken to social media to discuss his intentions to further litigate the matter. On November 28, 2021, Holman posted: "69 – 73 Powsland Street, Portland, Maine, is not developable land. The owner . . . is trying to be Trump of Portland. His Attorney should be disbarred. There is a Federal lawsuit awaiting [sic] to happen. Tortious Interference." Holman has solicited others to join him in a class action lawsuit regarding the Willow neighborhood storm water in a public notice in the Portland Press Herald as well as solicitations via email and Facebook.

This current litigation arises out of a City Planning Board decision of April 19, 2023, approving STJ's Major Site Plan Application to develop nine affordable housing units at 73 Powsland Street. Holman contends that the Planning Board's decision must be vacated because the zoning for the parcel is "illegal" and the Planning Board erred when it found that STJ's application complied with the City Code's site plan standards, granted a Department of Environmental Protection waiver, and relied on a geotechnical study prepared for a previous development proposal. Holman filed his two-count complaint on May 9, 2023, seeking declaratory judgment that the City violated his rights to equal protection under the Fourteenth Amendment to the United States

7

Constitution and Article I, Section 6-A of the Maine Constitution (Count I), and for M.R. Civ. P. 80B judicial review of governmental action (Count II).

At oral argument, Holman evinced no intention of accepting a result adverse to his arguments. He openly admitted that he had been "doing this for eighteen years." He continued to argue that the zoning of the parcel is illegal despite acknowledging that he had litigated the 1997 zoning change to its final point at the Law Court and losing the argument there, stating, "to me its illegal." Holman represented that the merits of his arguments have never been considered and contended that, by filing an answer and Holman's complaint in the matter that Holman served but never filed, STJ's counsel had acted improperly.

## II.    Discussion

### A. Motion to Dismiss

The City has moved, and STJ has joined, to dismiss Count I, Holman's request for declaratory judgment, for failure to state a claim and pursuant to the exclusivity doctrine. On a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), the Court assumes all facts alleged in the complaint are true, and examines the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Oakes v. Town of Richmond*, 2023 ME 65, ¶ 15, ___ A.3d ___ (quoting *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43). "'A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief

under any set of facts that [they] might prove in support of [their] claim.'" *Id.* (quoting *Moody*, 2004 ME 20, ¶ 7, 843 A.2d 43).

When a complaint is brought pursuant to M.R. Civ. P. 80B and it contains an "ostensibly independent challenge to the law applied by the municipal body, the latter may properly be dismissed as duplicative if it 'relies on the same factual allegations, and seeks the same relief' as the Rule 80B appeal." *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 8, 209 A.3d 102 (quoting *Kane v. Comm'r of the Dep't of Health & Hum. Servs.*, 2008 ME 185, ¶ 32, 960 A.2d 1196). A claim for declaratory judgment is proper as an anticipatory challenge, but after a municipal agency has adjudicated a matter, the "contention that the decision was erroneous because it infringes upon some superior legal authority becomes subsumed within 'the essence of matters that must be brought pursuant to Rule 80B to question whether the particular action of a municipal administrative agency is consistent with the requirements of law.'" *Id.* (quoting *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 13, 868 A.2d 172). This is true even of constitutional challenges. *Id.* Therefore, after the municipal body has already decided an issue, a claim for declaratory judgment that relies on the same facts and seeks the same relief as a claim for review under M.R. Civ. P. 80B is properly dismissed as duplicative because Rule 80B provides the exclusive means of judicial review. *See id.*

Here, Holman's complaint relies on the same factual allegations for both the count seeking declaratory relief and the count seeking Rule 80B review

9

because both counts incorporate the same nineteen paragraphs of background information. (Compl. ¶¶ 20, 24.) The ultimate relief Holman seeks is to have this Court determine that the Planning Board's decision was based on legal errors and to vacate and remand the decision granting STJ's application to develop 73 Powsland Street. Count I for declaratory judgment is duplicative of Holman's request for judicial review under Rule 80B and Count I must accordingly be DISMISSED. Because Count I is dismissed as duplicative, the Court need not reach whether Count I adequately states a claim for relief.

### B. *Spickler* Motion

A court may enjoin a party from filing frivolous and vexatious lawsuits upon a "detailed showing of a pattern of abusive and frivolous litigation." *Spickler v. Key Bank of S. Me.*, 618 A.2d 204, 207 (Me. 1992). The court must not issue "a more comprehensive injunction than is necessary." *Id.*

The facts of the two *Spickler* cases that resulted in injunctions issued against the Spicklers enjoining them from filing frivolous lawsuits are instructive. In *Spickler v. Key Bank of S. Me.*, the Superior Court's injunction restraining the Spicklers from commencing frivolous actions against the defendants and their agents was upheld based on the Superior Court's judicial notice of "a number of lawsuits involving the Spicklers and their corporations." *Id.* The Superior Court "specifically found that '[h]istory suggests that the Spicklers will continue to sue individuals involved in this litigation unless the injunction issues' and that 'intentions to file such a suit have already been voiced.'" *Id.*

10

In *Spickler v. Dube (Spickler II)*, the original litigation concerned a land transaction between Dube and the Spickler's closely held corporation. *Spickler v. Dube (Spickler II)*, 644 A.2d 465, 466 (Me. 1994). After the Spicklers failed to prevail at trial, the Spicklers filed a motion for a new trial alleging that a letter Dube had put into evidence was fabricated. *Id.* This motion was denied and the denial was affirmed at the Law Court, although the Law Court allowed Spickler to assert fraud pursuant to M.R. Civ. P. 60(b)(3). *Id.* Spickler made the Rule 60(b)(3) motion but later withdrew the motion. *Id.* The next year, Robert Spickler sued Dube and his counsel in federal court for allegedly manufacturing the evidence, but Spickler failed to show up for trial and the matter was dismissed for lack of prosecution. *Id.* The federal court also issued an injunction preventing Spickler from bringing suit against the defendants regarding the same issues in the complaint or the underlying land transaction unless he could demonstrate a prima facie case to a district court judge. *Id.* The First Circuit Court of Appeals affirmed. *Id.* The Spicklers then filed three lawsuits concerning the alleged fabricated evidence in Maine courts and the matters were consolidated. *Id.* at 466-67. The defendants were granted summary judgment on the Spickler's claims and the defendants' counterclaims and the Superior Court issued an injunction restraining the Spicklers from commencing litigation against the defendants related to the underlying land transaction or subsequent litigation unless they first satisfied the Superior Court that they presented at least a prima facie case. *Id.* at 467. The injunction was affirmed by the Law Court because the defendants made a detailed

11

showing of abusive and frivolous litigation and the injunction was not more comprehensive than necessary. *Id.* at 468-69.

This is the third time STJ has moved for a *Spickler* order. STJ argues that the entry of a *Spickler* order is necessary to protect STJ and related entities from having to respond to further litigation Holman brings attempting to litigate old and already-decided issues. The first two *Spickler* motions were denied because the underlying litigation had already been dismissed, leaving the court without jurisdiction to enter the order. *Holman v. STJ, Inc.*, No. CV-2018-302, slip op. at 1, 3 (Me. Super. Ct., Cum. Cnty., Feb. 20, 2019); *Holman v. STJ, Inc.*, No. CV-18-97, slip op. at 1, 5 (Me. Super. Ct., Cum. Cnty., Oct. 30, 2019). This motion was made before any dispositive action had been taken on Holman's underlying Rule 80B claim, therefore the jurisdictional defect present in the first two *Spickler* motions does not prevent this Court from entering such an injunction against Holman.

The Court concludes that STJ has made its required showing of a detailed history of abusive and frivolous litigation related to Holman's 10 Willow Lane property. Holman has filed four lawsuits naming STJ as a defendant and the most recent three are based on the same or similar allegations that Holman brought against STJ in 2007, mainly, that STJ's development at 73 Powsland Street will cause storm water to drain onto and damage his property. The Superior Court has already found that the second such lawsuit was deliberately withheld from filing with the court and was vexatiously commenced. *Holman v. STJ, Inc.*, No. CV-18-97, slip op. at 1-2 (Me.

12

Super. Ct., Cum. Cnty., Oct. 30, 2019). Holman then appealed that case to the Law Court but failed to file a brief and his appeal was dismissed. *Id.* at 2 & n.4. His third suit against STJ was dismissed in part for failure to oppose the motion to dismiss, evidencing Holman's failure to prosecute, and because the action attempted to re-litigate the 2007 matter. *Holman v. STJ, Inc.*, No. CV-2018-302, slip op. at 1-2 (Me. Super. Ct., Cum. Cnty., Nov. 13, 2018). Holman has twice been warned by the Superior Court that litigious behavior and attempts to re-litigate old matters could result in a *Spickler* injunction being entered against him, yet he filed this suit in part based on the same allegations he has repeatedly made against STJ since 2007 regarding activity at 73 Powsland Street that took place in 2007.

In addition to his suits against STJ and related entity, Gorham Sand & Gravel, Holman has initiated five additional lawsuits against various parties alleging various wrongdoings that he argues are causing water diversion onto his property. In 2018 alone, he filed three lawsuits against his neighbors and the Willow Home Owners Association on this basis, with the latter two lawsuits filed while his other suits were pending. Two of the cases were consolidated and the other was dismissed as duplicative. *Holman v. Johnson*, No. CV-2018-143 (Me. Super. Ct., Cum. Cnty., Stipulated Order entered Nov. 20, 2018); *Holman v. Willow Home Owners Ass'n*, No. RE-2018-179, slip op. at 3 (Me. Super. Ct., Cum. Cnty., Order entered Sept. 11, 2018). He has filed two additional lawsuits related to his property: one against the City's contractor doing work on 73 Powsland and the surrounding area, and one against the City

13

for alleged illegal zoning. Holman has also filed four licensure complaints against professionals involved in the Powsland Street project that appear to have been meritless.

STJ has also made a showing that Holman does not intend to stop litigating the matter until he prevails. He has expressed this to STJ's counsel through email communications spanning from at least 2018 through 2022. In one 2018 email, Holman explicitly stated "I will not be going away, and that I will fight this forever! I have not yet begun to fight, and I will prevail legally with all my pursuits and efforts." (Mot. Order to Restrain Pl. from Filing Further Lawsuits, Ex. C.) Holman's statements at oral argument evidence an inability to understand or accept, perhaps deliberately so, that the 1997 zoning change will not be disturbed by the courts because the statute of limitations has run and he has litigated the matter to its final point at the Law Court and he did not prevail. He further appears unable to understand or accept, again perhaps deliberately so, that because of his failure to file the 2018 complaint with the court he has been ordered to pay attorney's fees and he has failed to pay them. He continues to maintain that STJ's counsel improperly filed his complaint for him despite the court finding that, under M.R. Civ. P. Rule 3, the defendants had no choice but to answer the complaint and file their compulsory counterclaim. *See Holman v. STJ, Inc.*, No. CV-2018-97, slip. op. at 1 (Me. Super. Ct., Cum. Cnty., Order entered June 21, 2018).

Holman's opposition to STJ's *Spickler* motion fails to convince the Court that a *Spickler* order should not be entered. His opposition is largely based on

14

irrelevant matters and fails to refute any of the showings STJ has made demonstrating Holman's litigious behavior. The opposition itself provides further evidence that Holman is unwilling to let old and legally irrelevant matters go. Contrary to Holman's contention, the entry of a *Spickler* order would not violate his First Amendment rights to "petition governmental entities about . . . zoning issues." He remains free to bring meritorious claims against STJ and he remains free to use the political process to attempt to convince the City to change its zoning laws. Nothing in the Court's order will prevent him from doing so.

In sum, Holman's history of litigation related to 10 Willow Lane and 73 Powsland Street is analogous to the litigation history of the Spicklers for which the vexatious litigant injunction is named. Like the Spicklers, Holman has brought numerous lawsuits that are all related to the same or similar set of facts. He has at times failed to prosecute these lawsuits. He has made his intentions known that he does not intend to accept an adverse outcome and will litigate until he prevails. STJ has shown a detailed history of abusive and frivolous litigation, therefore STJ's motion for a *Spickler* order is GRANTED.

### C. Rule 80B Appeal

The City argues that the Court should dismiss Holman's Rule 80B appeal under M.R. Civ. P. 80B(h). Specifically, the City argues that Holman's failure to follow Rule 80B's strictures regarding filing the record has prejudiced the City because the City had to use a significant amount of time in its reply brief

window confirming whether the record was complete and accurate and supplementing the record where it was not.

Under Rule 80B(e)(1), it is the plaintiff's responsibility to prepare and file the record of the challenged proceedings with the Superior Court. M.R. Civ. P. 80B(e)(1). Rule 80B further provides that "[t]he parties shall meet in advance of the time for filing the plaintiff's brief or motion for trial of the facts to agree on the record to be filed." M.R. Civ. P. 80B(e)(2). "The record shall include the application or other documents that initiated the agency proceedings and the decision and findings of fact that are appealed from, and the record may include any other documents or evidence before the governmental agency and a transcript or other record of any hearings." *Id.* If the challenged decision was based on a municipal ordinance, the relevant sections of the municipal ordinance must be included in the record. *Id.* "If the plaintiff fails to comply with subdivision (e) or (g) of this rule, the court may dismiss the action for want of prosecution." M.R. Civ. P. 80B(h); *Blanchard v. Inhabitants of the Town of Falmouth*, No. AP-2002-49, 2004 WL 4093828, at *1 (Me. Super. Ct., Mar. 3, 2004) (dismissing 80B appeal where the plaintiff failed to file the record or an acceptable substitute).

Holman failed to comply with Rule 80B(e) in several ways. He did not confer with Defendants' attorneys to discuss the contents of the record.[2] He

---

[2] At oral argument, Holman represented that he "sent" the proposed record to Defendants' attorneys but the attorneys did not receive it, but he failed to show any evidence of this or refute the City's representations that he did not confer with it about the contents of the record. Even if Holman did send the proposed record to the Defendants before his brief was due, the Court does not believe this was sufficient to satisfy his responsibility, as the plaintiff, to prepare and file the record and meet with the City and STJ to agree on the record to be filed.

also did not include within the record STJ's application that initiated the Planning Board proceedings or the relevant portions of the City Code. In his reply brief, rather than attempting to remedy the deficient record, Holman argued that the Court should limit its review to his record that provides alleged factual evidence for his arguments. He contends that limiting the appeal to the record before the agency would be prejudicial to him because the Planning Board's decision was averse to his interests. This is neither required nor authorized by Rule 80B. "Except where otherwise provided by statute or by order of court pursuant to subdivision (d) hereof, review shall be based upon the record of the proceedings before the governmental agency." M.R. Civ. P. 80B(f). Holman has not identified any statutory basis allowing for a different record than the rule requires, nor has he moved for a trial of the facts under Rule 80B(d). The proper record in this case is the record of the proceedings before the governmental agency, which Holman has admitted in his reply briefing he deliberately failed to file. Therefore, the Court DISMISSES his 80B appeal for want of prosecution. M.R. Civ. P. 80B(h).

### III. Order

For the reasons discussed above, the entry is:

1. Count I of the complaint for declaratory relief is DISMISSED.

2. STJ's Motion for Order to Restrain Plaintiff from Filing Further Lawsuits in GRANTED. The Court further orders on the motion as follows:

17

a. Unless and until Dale Holman has met the requirements of this Order, Dale Holman is permanently restrained from attempting to reopen any old lawsuit or filing any new lawsuit against any of the following persons or entities: STJ, Inc., Gorham Sand & Gravel, Inc., the Property Known as 73 Powsland Street, Portland, ME 04102, and any past, present, or future employee, representative, agent, attorney, engineer, or officer of STJ, Inc. or Gorham Sand & Gravel, Inc.

b. Prior to filing a motion or complaint or filing any recording encumbering real property of the protected parties with the Registry of Deeds, Holman must first petition this Court, attaching a copy of this Order, seeking permission to commence litigation or encumber any such real property.

c. Holman must copy any of the parties protected by this Order at the same time he files a petition with the Court. The parties protected by this Order shall have 21 days to respond to the petition or to seek additional time if necessary.

d. Holman must provide: (1) evidence with the petition that the lawsuit is based on good cause and (2) evidence that he has incurred actual and verifiable, as opposed to *de minimus*, damages or that an actual and verifiable, as opposed to *de minimus*, personal or property right is infringed.

18

e. The Court may award any attorney's fees of a party protected by this Order at its discretion in the event it turns out either that the complaint or lawsuit is not based on good cause or that there are no actual and verifiable damages or no actual and verifiable personal or property right at stake, which said actions and/or personal property rights must also be more than mere *de minimus* damages or rights.

3. Count II of the complaint seeking review of governmental action pursuant to M.R. Civ. P. 80B is DISMISSED for want of prosecution.

SO ORDERED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

DATED: December 7, 2023

_____
Deborah P. Cashman
Justice, Maine Superior Court

Entered on the Docket: 12/11/2023

Plaintiff-Dale J Holman Pro Se
Defendant City of Portland-Amy McNally, Esq.
Defendant STJ Inc-Bruce Hepler, Esq.

19